COURT OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                      FORT
WORTH

 

 

                                           NO.
2-07-413-CR

 

 

LADERRELL ANTONIO HOLLOWAY                                        APPELLANT

 

                                                      V.

 

THE STATE OF TEXAS                                                                 STATE

 

                                                  ------------

 

         FROM
CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

 

                                                  ------------

 

                                  MEMORANDUM
OPINION[1]

 

                                                  ------------








The trial court revoked
Appellant Laderrell Antonio Holloway=s deferred adjudication community supervision, found him guilty of the
felony offense of aggravated assault with a deadly weapon,[2]
and sentenced him to fifteen years= confinement.  In one issue,
Appellant argues that the trial court abused its discretion by proceeding to
adjudication and by sentencing him to fifteen years= confinement.  We will affirm.

During the punishment phase
of the revocation hearing, Carmen Lewis testified about the events that led to
Appellant pleading guilty to aggravated assault with a deadly weapon and being
placed on ten years= deferred
adjudication community supervision.

Lewis testified that she and
Appellant lived together during the spring and early summer 2007.  She said that on June 5, 2007, she ended her
relationship with Appellant and gave him an eviction notice, which stated that
he was to leave her apartment with his belongings within seven days.  Lewis testified that on June 8, 2007, when
she returned from an evening with friends, Appellant was outside her apartment,
Afurious [and] angry.@  She said he demanded to know
where she had been, accused her of cheating on him, and pushed her into the
apartment.  Lewis said that once inside,
Appellant cornered her, pushed her down on the floor, and proceeded to Arip [her] underwear off of [her]@ to determine if she had Abeen out with someone else.@  Lewis said that Appellant
repeatedly punched her, kicked her multiple times, and choked her.   








Lewis recounted that
Appellant threatened her by saying, AYou=re going to
die tonight, I told myself if you wasn=t in by midnight, I was going to kill you.  You=re going to die.@  She said that Appellant went into the
kitchen, grabbed a Abutcher
knife,@ and began waving it around, threatening her, stabbing it into the
wall, and at one point throwing it at her. 
From there, according to Lewis, Appellant demanded that she put her
shoes on.  Appellant then grabbed her
and, holding the knife at her side, walked her down three flights of stairs and
placed her in the passenger seat of her car. 
After driving aroundCall the while Appellant was threatening that he was going to kill herCLewis said they eventually returned to her apartment, where she got on
her knees and begged him to Anot do anything to me.@  She said Appellant eventually
calmed down and instructed her to take a shower.  Lewis said that when she finished showering,
she found Appellant nude in her bed and that despite her protests he proceeded
to have intercourse with her.  Lewis
testified that she went to the police station the next morning and reported
what had transpired.  








The Grand Prairie Police
Department issued an emergency protective order enjoining Appellant from going
within 500 feet of Lewis=s apartment
and from communicating with her in a threatening or harassing manner.  Appellant was indicted for kidnaping and
aggravated assault with a deadly weapon. 
On July 23, 2007, Appellant pleaded guilty to the assault charge, and
the trial court placed him on deferred adjudication for ten years.  The terms of Appellant=s probation included the conditions that he not commit a criminal
offense, that he report to the Tarrant County Community Supervision and
Correction Department upon release from jail, and that he have no contact with
Lewis.   

Upon release, Appellant
telephoned Lewis, informed her he had been released from jail, and told her he
needed a ride.  Lewis testified that she
told Appellant that they should not speak to each other.  She said that despite her telling him not to
call, Appellant called her a number of times that evening.  Later that night, Lewis was in her apartment
watching television and talking with a friend over the phone when she said she
heard Aa big bang at the door.@  She said she hung up the phone
and immediately dialed 911.  Lewis
testified that she grabbed a gun that she had purchased after the events of
June 8 and stood in the corner while on the phone with the 911 operator.  Lewis said that Appellant continued to Abang@ on her
door, and he eventually kicked in the door and it flung open.  Lewis said that at that point she fired two
shots, neither of them hitting Appellant. 
She said he fled the apartment but later called her and told her that Ait was on.@   








The State=s petition to proceed to adjudication alleged that Appellant violated
the terms of his community supervision by going to Lewis=s residence in violation of a protective order, failing to report to
his probation officer,[3]
contacting Lewis by telephone, and contacting her in person.  Appellant pleaded Anot true@ to each of
these alleged violations.  The trial
court found Appellant guilty of violating the terms of his community
supervision, adjudicated him guilty of the aggravated assault with a deadly
weapon offense, and sentenced him to fifteen years in prison.  This appeal followed. 

In part of his sole issue,
Appellant argues that the trial court abused its discretion in revoking his
community supervision.  We review the
trial court=s revocation
order under an abuse of discretion standard.  Cardona v. State, 665 S.W.2d 492, 493
(Tex. Crim. App. 1984) (en banc).  The
State=s burden of proof at a community supervision revocation hearing is a
preponderance of the evidence.  See
Lee v. State, 952 S.W.2d 894, 897 (Tex. App.CDallas 1997, no pet.).  The
trial court serves as the sole arbiter of fact in proceedings of this nature,
and an appellate court must view the evidence presented in a light most
favorable to the trial court=s order.  Garrett v. State,
619 S.W.2d 172, 174 (Tex. Crim. App. 1981).








In this case, the evidence
showed that Appellant had contact with Lewis in violation of the conditions of
his community supervision.  In fact,
Appellant does not contest that he called Lewis multiple times, went to her
house the night of July 23, and kicked in her door.  Appellant argues only that his conduct was a Amistaken, but heart-sick effort to get back together with her.@  We hold that the State carried
its burden and that the trial court did not abuse its discretion by revoking
Appellant=s community
supervision.  We overrule this portion of
Appellant=s sole
point.  

In the remainder of his sole
point, Appellant argues that the trial court abused its discretion by
sentencing him to fifteen years= confinement.  We disagree.  In order to preserve a complaint for appeal,
a party must have presented the trial court with a timely and specific request,
objection, or motion.  Tex. R. App. P.
33.1(a).  As a general rule, an appellant
cannot assert error pertaining to his sentence or punishment when he failed to
raise such error in the trial court.  Mercado
v. State, 718 S.W.2d 291, 296 (Tex. Crim. App. 1986). An issue concerning
the severity of a sentence is not preserved when the defendant=s contentions were not raised in the trial court by either a motion
for new trial or objection.  Holley v.
State, 167 S.W.3d 546, 549 (Tex. App.CHouston [14th Dist.] 2005, pet. ref=d); Keith v. State, 975 S.W.2d 433, 433B34 (Tex. App.CBeaumont
1998, no pet.).  Because Appellant did
not raise an objection that the fifteen‑year sentence was an abuse of
discretion, or any objection relating to his sentence, at his revocation
hearing, he has waived the issue on appeal. 
Tex. R. App. P. 33.1.  








But even if Appellant had
timely objected, the trial court did not abuse its discretion.  Where, as in this case, the punishment
assessed is within the range prescribed by statute, it is beyond the province
of an appellate court to pass upon the propriety of the sentence.  Darden v. State, 430 S.W.2d 494, 496
(Tex. Crim. App. 1968).  Appellant=s fifteen‑year sentence falls within the statutory range of
punishment for the second-degree felony of aggravated assault with a deadly
weapon to which Appellant pleaded guilty; therefore, his sentence is not
excessive.  Tex. Pen. Code Ann. '' 12.33, 22.02(a)(2) (Vernon 2003 & Supp. 2008); see Puga
v. State, 916 S.W.2d 547, 550 (Tex. App.CSan Antonio 1996, no pet.). 
Under these circumstances, the trial court did not abuse its discretion
by revoking Appellant=s community
supervision and imposing a fifteen‑year sentence.  We overrule the remainder of Appellant=s sole point.

Having overruled Appellant=s sole point, we affirm the trial court=s judgment. 

PER CURIAM

PANEL: 
HOLMAN, LIVINGSTON, and DAUPHINOT, JJ.

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  November 6, 2008











[1]See Tex.
R. App. P. 47.4.





[2]See Tex.
Pen. Code Ann. ' 22.02(a)(2)
(Vernon Supp. 2008). 





[3]Jennifer
Michelle Galindo, a court officer for the Tarrant County Community Supervision
and Correction Department, testified that Appellant was released  on July 23, 2007, and instructed to report to
the probation office on July 24, 2007, but failed to report on that day.